JUSTICE WHEAT
dissents.
¶62 I respectfully dissent.
¶63 The majority correctly notes that an EA may be in a checklist format. Opinion, ¶ 44. A checklist EA, however, must still comply with the requirements of MEPA. This includes an analysis of the cumulative and secondary impacts. Opinion, ¶ 45. The majority concludes, based on the “extensive administrative record and [the] institutional body of knowledge” within the MBOGC, that the MBOGC did not ignore cumulative impacts in its assessment of the wells at issue. Opinion, ¶ 49. This conclusion, however, ignores the *257 unambiguous intent of the Legislature and the very purpose of requiring an environmental assessment. MEPA is procedural, but it was the intent of the Legislature that MEPA would provide an adequate review of state actions to ensure that “the public is informed of the anticipated impacts in Montana of potential state actions.” Section 75-l-102(b), MCA. The Legislature additionally made it clear that the unequivocal purpose of requiring an environmental assessment is to ‘inform the public and public officials of potential impacts resulting from decisions made by state agencies.”Section 75-1-102(3)(a); See State ex. rel. Mont. Wilderness Assn. v. Board of Nat. Resources & Conservation, 200 Mont. 11, 30, 648 P.2d 734, 744 (1982) (‘The primary function of the EIS is to provide the decisionmaker with environmental reports sufficiently detailed to allow a knowledgeable judgment and to allow public feedback in the development of that information.”)
¶64 The public is not informed when an agency’s decision-making process is concealed within the confines of its institutional knowledge, and the only way to uncover the details is by engaging in lengthy litigation. Nor is the public benefitted by reviewing an EA which does not explicitly set forth the actual cumulative impacts and the facts which form the basis of the analysis. See Friends of Wild Swan v. Dept. of Nat. Resources & Conservation, 2000 MT 209, ¶ 35, 301 Mont. 1, 6 P.3d 972. Because the public has been left in the dark, I would reverse the District Court and find that the MBOGC’s EAs are inadequate. ¶65 I believe that the EAs are inadequate because they contain only generalized conclusory statements in the form of expert narratives - or as the majority calls it, ‘institutional knowledge.” Each of the twenty-three EAs devotes a single line to ‘Evaluation of Impacts and Cumulative effects.”The “answer”to this question is some variation on the statement: ‘No long term impacts expected. Short term impacts will occur but can be mitigated in time.” This explanation is inadequate because it provides no information to the public, thereby undermining the purpose of MEPA and preventing any meaningful public participation.
¶66 Moreover, the EAs are not properly tiered to the 1989 PEIS and the 2003 FEIS. Tiering is not defined in MEPA or its associated administrative rules. It is, however, defined in NEPA’s regulations: '
‘Tiering” refers to the coverage of general matters in broader environmental impact statements (such as national program or policy statements) with subsequent narrower statements or environmental analyses (such as regional or basinwide program *258 statements or ultimately site-specific statements) incorporating by reference the general discussions and concentrating solely on the issues specific to the statement subsequently prepared.
40 C.F.R. § 1508.28 (2012) (emphasis added). The plain language under NEPA requires the tiered document to be explicitly incorporated. This insures that the public is informed of the documents underlying an agency decision.
¶67 Here, MBOGC admits that it failed to explicitly reference that the EAs were tiered to the 1989 PEIS or the 2003 FEIS. Opinion, ¶ 39. The majority disregards this failure and claims that it is “clear from the record that MBOGC staff relied on these past reviews in developing the EAs at issue here.” Opinion, ¶ 42. MBOGC’s reliance on these documents is appropriate, but it remains that the public was not informed of this reliance at the time the EAs were published. Consequently, because the EAs were completely devoid of any mention or reference to these EISs, they are inadequate.
¶68 Even if the agency did implicitly tier the EAs to the prior EISs, I would still find the EAs inadequate because MBOGC’s failure to reference them in the EAs undermines the purpose of MEPA. MEPA requires MBOGC to inform the public of not only the documents it relies on, but also the specific information within the relied upon documents. MBOGC did neither. As a result, the public remains uninformed and is unable to meaningfully participate in the MEPA process.
¶69 The actions of the MBOGC are not only improper, but they undermine MEPA. Given that MEPA is a procedural statute, I cannot condone the EAs at issue because they are not in compliance with MEPA’s plainly articulated procedures. The cumulative impacts and any tiered documents should have been clearly set forth to ensure an informed public. Instead, the MBOGC’s failure to comply with MEPA has forced the public to engage in time consuming and costly litigation. I believe that the public should not be forced to rely on litigation to uncover information that rightly should have been disclosed in the EAs.
¶70 For these reasons, I would find that the EAs at issue are unlawful. See N. Fork Preservation Assn., 238 Mont. 451, 460-64, 778 P.2d 862, 868-70 (1989). I would therefore reverse the District Court’s grant of summary judgment and remand this case for entry of judgment in favor of the Federations.
JUSTICE MORRIS joins in the foregoing dissent.